P. BANNON *vs.* JOHN OVERTON.

October Term, 1873.

ACCOUNT—EFFECT OF RE-REFERENCE AFTER A HEARING ON EXCEPTIONS.— After a hearing on exceptions to a report, made under a reference, by consent of parties, of all matters arising under the bill and answer, and a re-reference by the Chancellor with instructions, it is too late to make new issues by exceptions to the amended report, and the Chancellor's rulings at the former hearing are conclusive.

SAME.—Where, therefore, the order of re-reference was to charge the defendant with all material that came to the hands of the defendant according to contract, and the proof showed that the last shipment was to supply a previous shipment, in violation of the contract, of defective material, and that it was shipped too late to be used, it was held that it would be inequitable to charge the defendant with such last shipment unless it was shown to have actually come to his hands.

SAME—Where, also, the reference was to report the value of articles furnished and used by defendant, it is too late to insist that such value should be fixed at the estimate of the architect made long previous to the litigation, and which estimate was before the court at the former hearing.

REPORT—EXCEPTION TO VALUATION OF WORK WILL NOT EMBRACE CLAIM FOR DAMAGES.—A claim for damages for the delay in delivering material, and for the cost of putting the material in the completed building, cannot be entertained under an exception that the work is assessed too high.

———————— for complainant.

*John Reid,* for defendant.

Bill filed to recover for material shipped from Cincinnati in 1861, under a written contract, to be used in building the Maxwell House, in Nashville.

THE CHANCELLOR:—On the 5th of August, 1872, a decretal order was entered in this cause, "by consent of parties," directing the clerk and master to take proof and state an account between the complainant and defendant "of all matters arising under the bill and answer," and report the same to the court, there being in the order no settlement of the rights of the parties, and no reservation of any question of law or fact for the consideration of the court.

Under this reference the clerk and master made his report on the 18th of October, 1872. Both parties filed exceptions, the complainant, because the clerk and master "failed to allow the last shipment of material," and the defendant, because "the work done and delivered" is assessed too high, and because the complainant is allowed too much interest.

On the 9th of Nov., 1872, the cause was heard by the then Chancellor upon the report and exceptions, upon consideration whereof he was of opinion that the master "ought to take proof and report to the court the value of the articles furnished by the complainant and used by defendant, or that came to the hands of the defendant according to the contract," and he referred the case back to the master for this purpose, and directed him in taking the account to "disallow interest during the continuance of the late civil war." The question whether interest should be allowed since the war, was reserved.

The clerk and master has taken additional testimony and made his report to this term of the court, and both parties have again filed the same exceptions.

34

The parties, by these proceedings, have voluntarily limited the litigation to the points raised by the exceptions. After having once had a hearing on the merits upon points selected by them, and a decision, they would not be permitted to go outside of these points and raise new issues, even if they sought to do so. But they do not, in fact, seek to make new issues by the exceptions filed to the new report. The exceptions are the same now as they were before. It is only in the argument that a change of base has been aimed at, and this rather by attempting to enlarge the scope of the exception than by going outside of it. It is clear, moreover, that the parties are bound by the Chancellor's decree as far as it goes. That decree, in substance, is that the complainant is entitled to "the value of the articles furnished by complainant and used by defendant, or that came to the hands of the defendant according to the contract," but not to interest on that value during the continuance of the late civil war. I think the decree must be held conclusive on these points (although the wording of it is not distinctly positive), because the reference ordered upon it would have been otherwise utterly useless, and because there is no reservation of these points for further consideration, as there is in regard to the interest accruing since the war.

Treating the decree as settling the rights of the parties, and considering the litigation as limited to the points made by the exceptions, the complainant's exception cannot be sustained. The decree is that the complainant is entitled to the value of the articles "used by defendant, or that came to the defendant's hands according to the contract." The clerk and master has, in his report, allowed the complainant the value of all articles "used by defendant." The complainant admits this in his deposition, and the fact is conceded by the form of his exception. The only question, therefore, is whether the last shipment of material "came to the defendant's hands according to the contract." Upon this point, the evidence is against the complainant. The defendant swears that it never came to his hands at all, and

the complainant fails to show that it did.   He proves that it reached Nashville, and that he saw it at the depot of the railroad, but, although here in person, he neglected to see to the delivery of the material to the defendant, or even to notify him, or any person for him.   This was gross negligence, and utterly inexcusable.   The only ground he can stand upon is that, under the contract, the mere fact of delivery at the depot was delivery to the defendant.   But, even if this were technically a delivery in law, under the wording of the contract, which is that the material shall be "delivered in Nashville," it would not meet the requirements of the decretal order, which is that the material "came to the defendant's hands."   The Chancellor manifestly intended to charge the complainant with only such material as was used by him, or actually, not constructively, received. Moreover, the further requirement is that it came to his hands "according to the contract."   But the contract was for material to be used in the erection of the Maxwell House, and to be satisfactory to the architect, and there is a clause in the contract inflicting a penalty of one hundred dollars for each day's delay.   It is true, this is a penalty which this court would not enforce except to the extent of the damage actually sustained by the delay, which is shown to have been only about one hundred dollars.   The complainant is, however, seeking relief actually at the hands of the court, and must show compliance with his contract, if he wishes to make the defendant pay for what he has never actually received.   His own testimony is express that his last shipment was to supply condemned material.   "Sometime in July," he says, "I received from Rogers & Son a letter telling me what pieces had been condemned, and they are the pieces I shipped in September."   If then he had sent material "according to the contract," that is, good work and according to the plans of the architect, the last shipment would have been unnecessary.   Under these circumstances, when the proof shows that the last shipment came too late to be used during the erection of the building, and does not show

affirmatively that it " came to the hands of the defendant," it would not be equitable to charge the latter with it.   For these reasons the complainant's exception must be disallowed.

The defendant's exceptions must share the same fate.   The point is that the work is " assessed too high."   The only proof, however, of the value of the work is contained in the depositions of Bannon and Stockell, and the clerk and master has taken the lowest figures.   The argument of defendant's counsel is that the complainant was bound to abide by the estimate of the architect, and the architect on the 18th of July, 1861, put a lower value on it.   But the Chancellor, in his order of the 9th of November, 1872, goes upon the ground that the complainant was not bound by the estimate, for it was then before him, and the reference was utterly useless if the estimate were conclusive.   Moreover, the statement of the architect is only of the value of the material " put in " the Maxwell House at the time (18th of July), and *non constat* that other material then on hand, or subsequently received, was not afterwards " put in." . The claim set up in argument that defendant ought to be allowed damages for delay in the delivery of material and the actual cost of now putting in such material, however just in itself, cannot, it is clear, be entertained upon an exception that the work is assessed too high.   This would require a more liberal construction than the court is inclined to give, or can give upon the settled rules of exegesis.

The exception as to the interest since the war is not pressed by the learned counsel of the defendant himself, and would be, under the circumstances, a hard measure of justice.

The exceptions will be disallowed and the report confirmed.